Judges of the United States Court of Appeals for the Fourth Circuit. Oh, yay. Oh, yay. Oh, yay. All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to draw nine. Give their attention to the court is now sitting. God save the United States in this honorable court. Wells Dixon from South Carolina, King Street. Ah, glad to have you here and you get to go first. Sir. Good morning, Your Honor. Judge Fraxel King. There's Hamilton. Um, it appears to me that in the facts of this case, they're really not in dispute. And, um, I guess I also should admit up front that unlike Mr Williams and even after two trials, I still don't have a plausible explanation as to how my client's passport got in the secret compartment and the vehicle along with the heroine. Um, the appeal raises three issues. Issue two tributes error to the district court when it classified the defendant as a career offender and sentenced according issue three attributes error to the defendant to the district court, excuse me, when denied the defendant's motion for a sentence with which varied from the guideline range. In my opinion, these two issues have been fully briefed by the appellate and by the government in their respective briefs. And it is my intention to not spend any time further time on these two issues. And let's call the police. Let me ask you about your issue three. Um, the sentence was within the guideline range, was it not correct? And there's no doubt the district court understood it had the authority to vary the sentence. That's correct. So is that issue reviewable on appeal? I don't believe it is. Thank you. All right. The district court, I believe, is correct when it applied jones to the facts of this Richard case. I believe it's also correct that there are no applicable exceptions to the application of the exclusionary rule in the Richard case. I think the court what is an error when it determines that there is an intervening certain traffic violation that this new and distinct crime purged the taint from the illegal use of the gp tracking device and that subsequently seized was not suppressed. The district court did not specifically address the fact that the traffic stop was all part of the continued use of the GPS tracking device was all part of what the continued use of the GPS tracking device. Installation of the tracking device on all riches vehicle without a warrant and it's used to monitor the vehicle's movements for the purpose of obtaining information for a period of 27 days constituted a search under jones and a seizure is determined also in jones and violated the protection provided by the fourth amendment. The only meaningful remedy in the opinion of the appellant is to exclude all evidence obtained as a result of this warrantless intrusion into Mr Richard's protection against unreasonable searches and seizures. Now the the appellant understands that the issue of whether the exclusionary rule should apply in this in this situation is acknowledged as a separate as separate from the issue of whether they're the fourth amendment rights were violated. However, the district court aired when it determined that the minor traffic offense committed by the driver of the vehicle in which Mr Richard was a passenger constituted a new and distinct crime that purged the taint from the government's illegal use of the GPS tracking device. What was it a failure to give a turn signal? You failed to give a turn signal on I-26 at 5 30 in the morning and moved into the exit lane. There's no question moved into the exit lane exit lane. Don't get off of. Yes, sir. They're coming into charleston coming into north charleston and ashley phosphate exit. That's one of them. That's one of the first major exits in north charleston. Okay. All right. Of course, the court cited Sprinkle as the authority for that full circuit engine. But as I get as addressed in gains just in 2025 20,020 25 2012. I can't say if the court looks to the connection between the illegal search and the seizure of the evidence for Richard's vehicle, it should determine that the causal connection between the illegal search and the seizure of the incriminating evidence is not so attenuated as to just dissipate the taint of the illegal use of the GPS tracking device. First, the illegal search continued from the time the tracking device was attached to Richard's vehicle up to the time of the track that stopped the use of the Richard and the driver and the on the scene search of the vehicle and seizure of the heroin. The information obtained by the illegal use of the GPS tracking device as monitored by the north charleston narcotics squad detailed the trip to new jersey and back to north charleston south carolina alerting law enforcement that this was a trip to bring drugs back to south carolina. Second, the two narcotics detectives assigned to perform the traffic stop, which was part of the plan to search the vehicle were only on the scene because of the information provided by the tracking device. This minor traffic offense did not break the chain of causation between the illegal search and the incriminating evidence seized. These two detectives were not to stop and search the vehicle. This is not an intervening circumstance. Again is explained in Sprinkle. It was not a separate and distinct crime of the defendant who was not the drive of the grand prix but a traffic offense minor though it was by the drop that would not have been observed observed keeping without the information that was continuously provided again by the tracking device. Let me ask you, can you think of an analogous situation to this one perhaps in another search and seizure context where the police take advantage, they conduct an illegal search and they take advantage of information gained through the illegal search in order to find activity of another crime. Is there anything that's similar to this situation that we could use as a I don't know how to resolve this type of situation. Yes, I don't think so. I think the legal problem is attaching a gps tracking device and that makes an illegal search. Yes. And also the search only occurred because of the location of the vehicle in the law enforcement narcotics. This is the legal search. They got the gps on there. They're following him. That's an illegal search. Yes. They're able to take advantage of the information from an illegal search to know exactly where he is. Exactly. Yes. But and then he didn't, he the defendant, they take search in order to find other criminal activity. Well, the only criminal activities occurred was the traffic violation, right? Because you give the turn signal, you're saying that they wouldn't have been behind him if they hadn't had the gps on it. That's correct. That's the reason they were following. Yes. They set up, they set up on 95 after the turnaround in new jersey and followed down with different units coming in behind detective. Roy had his laptop making sure the gps was still still working, alerted the detective Bailey and Hughes had the drug dog sitting in the um the drug canine unit available also to come up to the scene and made the stop after the change of lane without the traffic. So what if I'm a police standing in their home and I've conducted an illegal search. Yes. And I see a marijuana on the table, drugs on the table in plain view. Is that analogous to the situation? I don't think so. Your honor, because the drugs were certainly not in plain view. If I can be just very specific in this case. But I mean, I just use that as as an example of obvious criminal activity. This day could be anything. I mean, whatever. Well, I think obviously if it's a evidence of a crime that the law enforcement officer knows about or if it's a legal substance, the drugs is not, you can't and I don't possess legally. I think they can be seized even though they're in the home illegally. I guess the difference would be in one place you're in this, in this particular case, you're in a place you got police are in the place. They got a right to be. Yes. And when someone's home they're not in a place they got a right to be. You could, you could carry the argument that it was possibly a legal stop. And I think that's where the court was, was, was district court was focusing on. But I don't see how it can be a legal stop when all you have, the only reason you are there and the entire team is there is because for 27 days they monitored the motions of this vehicle. Only time they ever checked to see if it was okay was to check to be sure the GPS tracking device was working. There was no, there's no other evidence of illegal narcotic activity at all. There was historical information from two confidential sources. One north charleston narcotics source, the other D. E. A. Source, the D. A. Agent Duffy said after they, his information was that they were going to do narcotics came from new jersey. So once they put the GPS tracking device on the vehicle, his instructions were this. If the vehicle goes to new jersey and makes a quick turnaround, we need to set up some way to make a traffic stop because that was a trip to pick up drugs. I mean, that's what court said. It was legitimate traffic stop. What if it was, it was legitimate traffic stop. What if it was, I don't concede. But here was they didn't give a turn signal. That's correct. So it was in the law. It doesn't, it doesn't matter what the subjective intent of the officers are if they have legitimate traffic violations to want to stop with the vehicle. That's correct. But if, if we had just a traffic unit on the scene, I understand what you're saying that they wouldn't have been there but for the GPS. Yes. And they actually didn't find the drugs until after they'd gotten a search warrant. Did they? Well, they did find a packet of drugs under the mat on the passenger side, the same side Richard was sitting on. But it was the conclusion in the, in the presentation in the trial was that that was an old packet that had fallen there somewhere and nobody was even aware that it was there. But they did discover the possibility of a secret compartment with a hydraulic lift and all of that at the scene. They didn't open that up until after they got the search warrant. That's correct. And they used the search warrant and they used the GPS tracking information to support the search warrant. As I was saying, the law enforcement intent was to catch Richard with illegal drugs. To that end, they installed the tracking device on Richard's vehicle without a warrant in the hope that something such as a quick turnaround trip to New Jersey area would take place. It did. When it did, DEA agents in the North Charleston narcotics unit, the dog team and possibly others set up as far west as I-95, all based upon the information provided again by the GPS tracking device. Detective Roy continued to monitor the travel of the vehicle. Even after the search, visual surveillance occurred on I-95 and 26th. The vehicle was stopped, the driver was questioned, the dog was deployed, and the search of the scene resulted in the seizure of heroin. That was the one under the map, not the seizure in the secret compartment. Well, didn't the driver, Ms. Coney, didn't she give consent to search? She did, your honor. She did. However, that was a girlfriend, right? Yes, sir. The driver was a girlfriend? Yes, sir. And she consented to search the car? She did. So it was a legal stop and then they had a consent search? It was a legal stop with the driver giving consent to search, none of which would have happened if they hadn't been there. Get back to my scene. You don't think none of which would have happened if we hadn't had the GPS? Well, they might have. They wouldn't have been there. You don't think it would have been? No, sir. I'm pretty sure they would. That's my strong position. If the traffic violation was a legitimate stop and you could search after that, you wouldn't even need a warrant for the GPS. You could put a GPS on the vehicle until it made the traffic change. Stop it. Well, the traffic stop is legitimate. Stop under, unless there's clear error, right? It's a legitimate stop, right? So it's a legitimate stop. And and and there was a consent and a search warrant and a search warrant later. Yes, sir. But this is not a but for situation. This is not but for the GPS situation. This is a because of the GPS situation. All right. Uh, and I think the, um, the district court was correct when they said the exclusionary rule should apply and apply the exclusionary rule to the time of the traffic. So he didn't fly far enough. That's exactly right. Yeah, I say again today. It didn't agree with you on part of it. But you did. That's why I'm going along. Go far enough. Didn't go far enough. No, sir. Um, did determine that there was no binding precedent in the fourth circuit and Jones had not been decided on how to use the GPS. And so therefore the exclusionary rule based upon the binding president did not apply and at the district court. So so found the USP knots case from 1983 has been cited as a possible as binding president for purposes of this application of the GPS tracking device. However, when you read Jones, Jones points out all the matters in Knox that were not the same. When you read the Knox decision, you look at you, you see all of the warnings in there that this question wasn't raised. We didn't have a chance to address the attachment of the beeper to the vehicle and on and on. And it was a beeper. It didn't have anything. It didn't have any of the characteristics global positioning tracking device has today. Um, it's our position that a warrant was required and the warrant was not obtained under the facts of this case. It was a warrantless use of the GPS tracking device. One day shy of what Jones, uh, tracking device was used. There's Jones 28 days. This one was 27 and Jones. You had a great long and involved investigation with wire taps and pin registers and surveillance to nightclub, all of that, which I'm sure the court's aware of. And in this particular case, what you had was historical evidence, a GPS tracking device attached without a warrant and just monitor it until something happens. And that's what that's what occurred. Thank you. You're out of time, but you've got some time reserved. Let's hear from Mr Williams. Yes, sir. William Mhm. Morning. May please. The court counsel. My name is Nathan Williams. I'm an assistant United States attorney out of South Carolina. I'm in the Charleston office. The good faith exception to exclusionary rule because there was no flagrant police misconduct in this case justifies the admission of the heroin or drug evidence. Judge Duffy considered. Go ahead. You're leading with your best argument. That's the best argument. Judge Duffy didn't use it, did he? He didn't. He used the subsequent intervening. You're giving him up. Well, he was right. I don't know if that was his best argument. Um, I think that argument works, but I believe that the good faith exception to the exclusionary rule is the strongest argument of the three that Judge Duffy considered, although he did not rule in favor of the good faith exception. He obviously, as the court has already discussed, went with the subsequent intervening illegality or the turn signal. But as Mr Dixon has pointed out, there was, um, there's a lot of case law that that discusses attenuation and whether there's a new and distinct or an illegal act that severs the connection between the illegality or the, in this case, the illegal search and then the discovery of the evidence. So certainly the turn signal in this case, um, arguably severs that activity, meaning the GPS was used, but the, um, use of the turn signal and other things, the use of a drug dog to sniff the outside of the car, the nervousness of the individuals in the car, several others that I would argue are more of a totality of the circumstances situation gave the obtained a search warrant to find most of the evidence in the case. So that argument is certainly there and it's a valid one. Um, however, it is not exactly the same as what you saw in Sprinkle or you saw in Bailey where you had officers that were going to conduct a frisk or were pursuing an individual. Then all of a sudden a gun gets pulled and somebody gets shot at the attenuation between tracking somebody on foot like you had in Sprinkle or in are very different. In this case we had a higher degree of attenuation. Mr. Dixon has mentioned the GPS tracker being used to identify where the vehicle was located. I think there was actually a little bit more to it than that. I think the testimony in the case indicated that the officers were using the GPS tracker to determine when the defendant was going to his source of supply in New Jersey to pick up heroin. So was this car actually returning from New Jersey? It was the GPS tracker had been installed and essentially the carbon stationary for weeks. I think there was one, one instance where the car moved, it went to a local laundromat. They saw the defendant with the car, but the information provided by two separate identified sources was that the defendant's source of heroin supply was in the northeast and they thought New Jersey. So the GPS tracker was applied to do what the officers would was determined when the vehicle was going to leave the area to connect with its source. And so when the tracker indicated that the car was going to New Jersey, um, they observed it further, saw a quick turnaround time and then the car came back to South Carolina. They set up on the side of the road and made the traffic stop, which involved the, um, the lack of a use of a turn signal, which is a traffic violation. You agree that was it was that that was a pretextual stop? Yes. And I would say that the testimony in the case explained the pretext. Officers, first of all, weren't entirely certain that there was going to be drugs in the car. So when they conducted the initial search, what they didn't want to do was to, um, disclose the existence of the investigation if there weren't going to be drugs inside. So the pretext of the traffic stop, first of all, would be for officer safety so that they wouldn't alert the driver and passenger that they were there for the drugs. And second of all, to give an opportunity to ascertain whether there was drugs in the car. So I would suggest to your honors that the testimony was if there had not been a positive drug hit by the dog on the car, they probably would have just gone back and and waited for another opportunity to find evidence. So that's not to say that there wasn't a crime committed or a traffic offense, but certainly it was a pretext. They were not, I would say, by any real measure, a marginal traffic offense. Right. And as I said, I mean, what percentage of people give a turn signal for interstate exit? Yeah. And I agree. I think it is a fairly marginal traffic offense. I don't think the officers in the case were by any by any testimony investigating traffic offenses. Uh, they were using that as a pretext, first of all, to not alert the passengers to their investigation. And second of all, to not disclose their investigation should not be drug evidence. So having said that, Sprinkle and Bailey and a lot of cases talk about that still as a valid subsequent intervening illegality. Unfortunately, I believe that those cases are less attenuated between the illegal activity or the illegal search and then the subsequent evidence which is recovered. So it certainly works. It's just not as I would say it's not as strong as what was seen in Sprinkle and what was seen in Bailey. On the other hand, Davis specifically and other cases that deal with the good faith exception, talk about and focus on the flagrancy of police misconduct. And that really at the heart of this case, but the good faith thing rises out of warrant, right? Inpatient warrant. It arises out of insufficient searches. Um, so so certainly where you don't have a warrant or where there's illegal activity or illegal searches that are conducted, Jones made it clear, granted a long time after this, these facts happen and the case, this case actually happened before Maynard. So even D. C. Hadn't said that the D. C. Circuit hadn't said that the use of the GPS device was a search. So at the time this occurred, the officers were doing what officers across the country were doing. What was sort of the recognized information that came out of knots, which was that you could use a GPS in public spaces. So they were doing what we would want law enforcement to do. There was certainly no flagrant misconduct. And Davis talks about that the question of, I think it's Justice Alito talked about whether there was flagrant misconduct underlying the illegal search. And certainly at that time there was no binding circuit court precedent. Um, I would suggest that that even now there's not a whole lot of direction from any of the circus as to non binding circuit precedent and the good faith exception is there's a lot of district court opinions. But right now I don't believe there's a whole lot of guidance as to the situation where you have non binding non circuit court precedent that agents or officers rely on to conduct the search, especially using a GPS. So at the bottom of this case, I believe what you see is officers doing what we would expect them to do, trying to follow the rules as best they could. I believe at the time Jones came out, there was a news report on, I think about 3000 GPS were taken down by the FBI. Um, I know that cases that I was working on when Jones came out, GPS is that were attached were shut down across the country. Reliance on the use of GPS on knots on caro and prior president was in good faith relied upon. So to to sanction the officers in this case, I think is contrary to what Davis talks about with the good faith exception where officers rely on earlier case precedent and then act according to any other circuits, use the good faith exception. Uh, no. And that's why I say there's not a whole lot of, at least in the GPS context, there's a lot of districts that have gone in both directions. Uh, but as far as circuits, I don't believe any have ruled on it yet. It's a very, um, I don't wanna say a new issue, but certainly there's no precedent on that issue. And there's certainly a split among the different districts as to which direction that would go. Meaning you need a specific binding precedent in your circuit in order to rely on. Or can you rely on non binding non circuit precedent such as knots or caro, which were outside the fourth circuit? Judge Duffy specifically ruled didn't apply. He did. And that's why I disagree with him on that point. But I also think he had a case out of the fourth circuit. One of the judges here, it was in Maryland or Virginia, had ruled opposite that he thought the good faith exception did apply to the use of a GPS. I think it was in Bautista. Bautista was the name of the case. So there certainly has been a lot of discussion and a lot of district court activity in both directions. But they all analyze that that same issue, which is the use of non binding non circuit court precedent for good faith. So I think that is the strongest argument. I think the intervening illegal turn is also a justification for the stop and and judge Duffy was right on that ruling. And finally, I'm not giving him up on the sprinkle case. No, I can't, I guess. I don't know. I guess it's up to you all to decide on on how, um, that follows through. But I do think that sprinkle fits and you haven't intervening illegality. It's just not the type we've seen in in Sprinkle or we've seen in Bailey, which were similar cases. And the final argument I think that applies is whether and the Supreme Court left this open in Jones, whether reasonable suspicion or probable cause would justify the search given an automobile exception. And I think they specifically left that open and said that the government did not argue in Jones that the search was supported by reasonable suspicion or probable cause. And I would suggest in this case there was certainly and I know Judge Duffy didn't find probable cause or reasonable suspicion. But I think when you analyze the facts of the case, having two individuals or informant stating that they knew this individual used this specific car, that they identified the car and identified him as well as where he obtained his drugs from his source. And then the travel to that area and back. Certainly, I think the defendant just driving that car on the freeway coming from the north would have been probable cause of reasonable suspicion to conduct the stop. And once the stop is made, you know, the case becomes much better. Meaning once the dog does the free air sniff and hits on the car, there's reason to get inside the car. The drugs are found in the search warrants obtained. This is all that reasonable suspicion and probable cause all that in the record. Yes, it was. You know, there are two trials in the case. The first trial was pre Jones. That first trial included all of the GPS evidence. Judge Duffy then suppressed that evidence and we proceeded to a second trial. He ordered a new trial without the evidence. We proceeded with simply the evidence of the traffic stop, but none of the evidence regarding the use of the GPS either substantively or as reason to be on the side of the road to conduct the stop or whatever. Okay. Yes, I did. The second one was a quicker verdict for some reason with less evidence. But so it certainly was brought up at the first trial. It was brought up in motions and it's in the record that the two cooperating sources described the location. And for that matter, the girl that was inside the car, Miss Coney testified that they, this was at trial both times that they drove up to New Jersey. She thought they were going there for to go on a trip and do some shopping. He, the defendant did some things that she couldn't understand, got out of his car, got back in and they came straight back to South Carolina. So she also gave a fairly clear account of what looked like a drug pickup or a transaction up in New Jersey. So I believe under all three of the theories that were presented to the district court, meaning the subsequent intervening like illegality, reasonable suspicion or probable cause, as well as finally the good faith exception to the exclusionary rule. Under all three of those theories, the court could have found this evidence admissible. He felt the judge focused on one of those. I think Sprinkle applies and Bailey as well. But at the end, I believe the lack of flagrant misconduct by the officers is what is clearest. They were doing what should have been expected of officers in that situation. And Davis talks about flagrant misconduct, and that certainly was not present here. So for those reasons, I would submit to your honors that the evidence should be admitted and judge Duffy should be sustained. Thank you, Mr William Dixon. Government's made your job a little bit easier. Yes. Um, think about everything has been said that could be said in this case, and I've got a little reluctant to go forward much further. Um, you're very well aware of Mr Richard's position, which I am trying to articulate. Um, I I'm firmly convinced that the warrantless use of the GPS tracking device for 27 days, which also gave the law enforcement officers on the scene when questioning Richard after he was removed from the car about the details of the trip to New Jersey, Richard said something about they've been there two or three days and the GPS track nice, which all of the narcotics agents were aware was that they had been a direct right wrong trip trip trip to New He was in New Jersey for about a half and then a direct trip back to South Carolina. The exact type of a trip that the D. A. Agent Special Agent Duffy had explained would be a trip to pick up narcotics. I have nothing else I can add if I may be unless there are some particular questions. Okay, thank you. Thank you, sir. Mr Dixon. I know you're court appointed. We appreciate very much. You're undertaking representation. We'll come down and Greek Council and then going down next case.
judges: William B. Traxler, Jr., Robert B. King, Clyde H. Hamilton